# IN THE COURT OF APPEALS OF IOWA

No. 15-1555
Filed October 12, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONALD RAY HARRIS,**
        Defendant-Appellant.

_____

        Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar, Judge.

        Donald Harris appeals the jury verdict finding him guilty of possession of a firearm as a felon.  **AFFIRMED.**

        Jesse A. Macro Jr. of Gaudineer & George, L.L.P., West Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.

        Considered by Danilson, C.J., and Mullins and Bower, JJ.

**DANILSON, Chief Judge.**

Donald Harris appeals following judgment and sentence entered upon conviction of possession of a firearm as a felon, in violation of Iowa Code section 724.26(1) (2013).

On August 15, 2014, police received a report of a person with a firearm in a silver car. When a vehicle matching the description was stopped, five people were in the vehicle. Leondra Hughes was the driver, Dequayvion Davis was in the front passenger seat, and three men were in the rear seat—Harris being one of them. The officer who pulled the vehicle over noticed the passenger in the front seat and the middle passenger in the rear seat making motions toward the driver's seat. Upon the police search of the vehicle, a firearm inside a sock was located on the floorboard under the driver's seat.

Harris was charged with carrying weapons[1] and with being a felon in possession of a firearm.[2] Hughes and Davis were also charged as co-defendants but later entered guilty pleas.

At trial, the officer who stopped the vehicle testified that he saw the person in the middle rear seat of the stopped car move forward toward the driver's seat. The police car video shows the middle rear seat passenger move forward toward

---

[1] Iowa Code section 724.4(1) provides:
>    Except as otherwise provided in this section, a person who goes armed with a dangerous weapon concealed on or about the person, or who, within the limits of any city, goes armed with a pistol or revolver, or any loaded firearm of any kind, whether concealed or not, or who knowingly carries or transports in a vehicle a pistol or revolver, commits an aggravated misdemeanor.

[2] Iowa Code section 724.26(1) provides:
>    A person who is convicted of a felony . . . and who knowingly has under the person's dominion and control or possession, receives, or transports or causes to be transported a firearm or offensive weapon is guilty of a class "D" felony.

the driver's seat at the time of the traffic stop. The testimony of the several police officers who converged on the scene placed Harris in the middle rear seat. Davis testified Harris was in the rear middle seat of the car Hughes was driving when they were stopped by police. Davis also stated that he saw Harris lean over to the front driver's seat, and then when Davis looked under the driver's seat, he saw a sock containing a gun. But Hughes testified Harris was in the rear seat behind the driver's seat. She also testified that when stopped by the police, Harris handed her a sock with something in it. She claimed not to know what was in the sock. Harris stipulated he had previously been convicted of a felony.

At the close of the evidence, Harris's attorney moved for judgment of acquittal, stating the evidence presented was not sufficient to show "one, [Harris] possessed this weapon, and/or, two, he was carrying it." The court overruled the motion, finding jury questions existed.

Concerning the charge of possession or dominion and control of a firearm as a felon, the trial court instructed the jury that the State had to prove (1) "Harris knowingly possessed or had under his dominion and control a firearm" and (2) "Harris was previously convicted of a felony." Actual, constructive, and joint possession were defined in another instruction. The phrase "dominion and control" was defined as meaning "ownership or right to a firearm and the power or authority to manage, regulate or oversee its use." The court also instructed the jury, "For Mr. Harris to know or have knowledge of something means he had a conscious awareness of it."

Concerning the elements of carrying weapons, the court instructed the jury Harris or someone he aided and abetted "[w]ent armed with a pistol, revolver or

loaded firearm within the city limits of Waterloo, Iowa" or "[k]nowingly carried or transported a pistol or revolver in a vehicle." The court instructed the jury, "To 'go armed' means Mr. Harris was aware of the pistol, revolver or loaded firearm and it was in a place where it was readily accessible to him."

The jury found Harris guilty of being a felon in possession of a firearm but not guilty of going armed. Harris argued to the trial court the verdicts were inconsistent. The court rejected that contention, concluding only legally-inconsistent verdicts are prohibited:

> The crimes, as charged, are two separate and distinct offenses with separate and distinct elements. The defendant wishes to argue that the two alternatives to the crime of carrying weapons, as charged in Instruction No. 20, are essentially the same as element No. 1 of Instruction No. 19 concerning the defendant's possession of a firearm. This is simply not the case. The defendant attempts to focus on the element of "knowing" as inextricably linking the crime of carrying weapons and the first element of the charge of possession of a firearm as a felon. The focus on the term "knowing" ignores the more important portions of Instruction No. 20 and paragraph 1 in Instruction No. 19 which are the action verbs contained within those instructions.
> . . . .
> . . . These verdicts are not legally inconsistent in light of the specific language and separate and distinct definitions concerning that language which are included within the instructions. This court does not believe that the sanctity of jury deliberation should be probed in this case . . . .

On appeal, Harris asserts there is insufficient evidence of dominion and control or possession to sustain the conviction, stating, "The contested issue at trial was whether the State of Iowa proved beyond a reasonable doubt that Mr. Harris knowingly possessed or had dominion and control of the firearm." We review sufficiency-of-the-evidence challenges for correction of errors at law. *State v. Schlitter*, 881 N.W.2d 380, 388 (Iowa 2016). In reviewing the sufficiency

of the evidence, we view the evidence in the light most favorable to the State and assume the truth of the evidence offered. *Id.* at 389.

"We will uphold a verdict if substantial record evidence supports it." *State v. Howse*, 875 N.W.2d 684, 688 (Iowa 2016) (citations omitted). "Evidence is substantial when 'a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt.'" *Id.* (citation omitted). Moreover, witness credibility is for the jury to determine. *State v. Myers*, 382 N.W.2d 91, 97 (Iowa 1986) ("The ultimate determination of the credibility or truthfulness of a witness is not 'a fact in issue,' but a matter to be generally determined solely by the jury.").

An officer saw the person in the middle rear seat of the stopped car move forward toward the driver's seat. The testimony of Davis and the police officer placed Harris in the middle rear seat. The police car video shows the middle rear seat passenger move forward toward the driver's seat at the time of the traffic stop. Davis testified he saw Harris lean over to the front driver's seat, and when Davis looked under the car seat, he saw the sock containing a gun. Hughes testified Harris handed her the sock. The gun was discovered on the driver's side, closer to the center console and wrapped in a sock.

Although the jury could have found Harris's movements innocuous or withheld giving weight from the testimony of Davis and Hughes, "the jury is at liberty to believe or disbelieve the testimony of witnesses as it chooses, and give such weight to the evidence as in its judgment the evidence was entitled to receive." *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984) (citation omitted). "The very function of the jury is to sort out the evidence presented and place credibility where it belongs." *Id.* The existence of evidence that might support a different

verdict does not negate the existence of substantial evidence sufficient to support the verdict. *See State v. Frake*, 450 N.W.2d 817, 818-19 (Iowa 1990). Viewing the evidence in a light most favorable to the State, we find there is substantial evidence in this record to support the conviction by Harris's furtive movements made at the time of the stop, by the location of both the gun and Harris in the vehicle, and by the testimony of Davis and Hughes.

Harris next argues the guilty verdict for possession of a firearm is inconsistent with the jury's finding of not guilty on the charge of going armed. This is not the type of case where the jury verdicts present a legal impossibility of convicting a defendant of a compound crime while at the same time acquitting the defendant of a predicate crime. *See State v. Merrett*, 842 N.W.2d 266, 274 (Iowa 2014) (noting "a criminal conviction of a compound offense cannot stand when the defendant has been acquitted of the underlying predicate offense" (citation omitted)); *see also State v. Fintel*, 689 N.W.2d 95, 101 (Iowa 2004) ("If jury verdicts are to be examined for inconsistency, the test to be applied is whether the verdict is so logically and legally inconsistent as to be irreconcilable within the context of the case. . . . [T]here was no inconsistency or duplication in the instructions. Nor was there any inconsistency in the jury's acquittal of defendant with respect to a completed manufacture of a controlled substance under the elements of Instruction 17 while convicting him based on the elements of this statutory crime that do not require a completed manufacture."). Moreover, as instructed, the jury could have determined that the gun was not readily accessible to Harris even though he had the power or authority to manage, regulate, or oversee its use.

Finally, he contends trial counsel was constitutionally deficient in failing to request a jury instruction requiring corroboration of accomplice testimony, failing to object to the prosecutor's improper impeachment of Davis and Hughes, and failing to lodge a more specific motion for judgment of acquittal.

Ineffective-assistance-of-counsel claims are reviewed de novo. *Schlitter*, 881 N.W.2d at 388. To prove an ineffectiveness claim, a defendant must show by a preponderance of the evidence both that counsel failed an essential duty and that the failure resulted in prejudice. *Id.* We generally preserve claims of ineffective assistance of counsel for postconviction-relief proceedings, unless the record on appeal is sufficient to evaluate trial counsel's performance. *See State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). Here, a more developed record is necessary[3] and trial counsel should have the opportunity to address Harris's challenges. We therefore affirm the conviction and preserve the ineffectiveness claims for possible postconviction-relief proceedings.

**AFFIRMED.**

---

[3] While the adequacy of the record to address the corroboration and impeachment issues on prejudice grounds alone is a close issue, we do not address them here because Harris also raises another claim concerning the adequacy of the motion for judgment of acquittal. We therefore preserve the claims for possible postconviction proceedings. *See Clay*, 824 N.W.2d at 501 (noting "the proper practice when dealing with multiple ineffective assistance claims").